[No. B036530. Second Dist., Div. Three. Aug. 22, 1989.]

PARAMOUNT GENERAL HOSPITAL COMPANY et al., Plaintiffs and Appellants, v.
JACK JAY, Defendant and Respondent.

362

**COUNSEL**

Selvin, Weiner & Ruben, Beryl Weiner, William E. Weinberger and Mark Jones for Plaintiffs and Appellants.

Levin, Ballin, Plotkin, Zimring & Goffin and Jay J. Plotkin for Defendant and Respondent.

**OPINION**

KLEIN, P. J.—Plaintiffs and appellants Paramount General Hospital Company, a limited partnership (Paramount), and Irving Moskowitz (Moskowitz), as an individual and general partner of Paramount (collectively sometimes referred to as Paramount), appeal from an order of dismissal of their malicious prosecution complaint against defendant and respondent Jack Jay, M.D. (Jay).

■ The issue presented is whether a cause of action for malicious prosecution can be stated where the plaintiff obtained a *partial* favorable termination of the underlying action.

The subject underlying action alleged multiple causes of action which were severable and could have been the subject of separate proceedings. Thus, the fact that Jay joined severable causes of action in one trial and that Paramount was not successful in defending the entire underlying action does not preclude it from properly pleading a favorable termination as to the causes of action on which it prevailed. The order of dismissal therefore is reversed.

## FACTUAL & PROCEDURAL BACKGROUND

1. *The underlying action.*

In June 1982, Camillo Jorge, M.D. (Jorge), Leslie Claus, M.D. (Claus) and Harper Dott, M.D. (Dott) filed a first amended complaint for breach of fiduciary duty, an accounting, injunctive relief, appointment of a receiver, dissolution and declaratory relief. Named as defendants were Paramount, Moskowitz and his wife, Cherna Moskowitz, Jay, and others.[1]

After a preliminary review of the issues involved in the action, the trial court ordered each to be tried separately and that as to each issue, an opening statement, presentation of evidence, closing argument and ruling was to be made separately. The matter was divided into 18 separate issues, which were tried before the court without a jury on various dates between May and September of 1987.

The trial court issued a lengthy statement of decision, as well as a 15-page judgment filed November 30, 1987, which provided in substance: *Issue 1*: All claims arising prior to December 5, 1977, were barred by a settlement

---

[1] Although the complaint named Jay as a defendant, the subsequent judgment states Jay agreed to be bound as if he were a plaintiff.

agreement and mutual release entered into between Moskowitz and the plaintiffs.

*Issue 2*: The issue concerning the bar of the statute of limitations was reserved as to each issue.

*Issue 3*: The articles of limited partnership for Paramount were validly amended and restated.

*Issue 4*: Irving and Cherna Moskowitz validly acquired the interests of withdrawing limited partners, Paramount funds were not used for said purchases and the transfers were properly recorded.

*Issue 5*: Cherna Moskowitz was validly elected a general partner of Paramount in 1981 and the election was binding upon the partnership and its partners.

*Issue 6*: Paramount's transaction with Ziggurat, Inc. was fair and reasonable, did not result in any improper personal advantage to Moskowitz, was fully disclosed to the partners who all profited from the transaction, and the sale was in the best interests of the partnership.

*Issue 7*: Paramount's sale of land to McKnight & Son (McKnight) was fair, did not improperly benefit Moskowitz, was fully disclosed and benefitted all the partners, and was in the best interests of the partnership.

*Issue 8*: Paramount's sale of land to Paramount Housing Partnership, Ltd., for the construction of senior citizen housing was fair and reasonable; Paramount received fair market value; no partnership opportunity was lost thereby; and all the Paramount partners profited therefrom in accordance with their respective partnership interests.

*Issue 9*: Contracts involving Moskowitz and defendant entities which he controlled were fair and equitable.

*Issue 10*: Payments for services to Moskowitz were fair and made for valuable consideration.

*Issue 11*: The management agreement between Moskowitz and Paramount was valid, was not breached and was properly assigned to a corporation wholly owned by the Moskowitzes.

*Issue 12*: There was no evidence of conversion of earnings, profits and assets.

*Issue 13*: There was no evidence of any wrongful refusal by defendants to distribute profits from the McKnight transaction.

*Issue 14*: With respect to a claim for wrongful refusal to distribute Paramount profits, including Jorge's claim that Paramount improperly offset from distributions due him rent in the sum of $76,776: Jorge's claim that he was not obligated to pay rent for office space was based upon a spurious document. Jorge was obligated to pay rent pursuant to a lease agreement with Paramount in the sum of $73,693, as claimed by Paramount. However, Paramount should not have set off attorney fees in the sum of $3,072 against distributions to Jorge.

*Issue 15*: With respect to plaintiffs' claims for an accounting: the accounting for defendant entities was kept in the ordinary course of business; the assets, income, disbursements, transactions and expenses were properly accounted for and reflected on Paramount's books and records; the accountings were made available to the plaintiffs, and defendants did not fail to account.

*Issue 16*: There was no basis for the claims of dissolution of the defendant entities.

*Issues 17 and 18*: Plaintiffs failed to establish the basis of claims for actual or punitive damages.

However, notwithstanding the valid amendment of the articles (Issue 3), and Cherna Moskowitz's valid election as general partner (Issue 5), on equitable grounds an amendment extending the term of the partnership from 1989 to 2021 was rescinded, as was Cherna Moskowitz's election. With respect to any other claims for relief, judgment was rendered in favor of Moskowitz and Paramount.

2. *The malicious prosecution action.*

Following the termination of the above lawsuit, on March 16, 1988, Paramount and Moskowitz filed a complaint for malicious prosecution against Claus, Dott and Jay.[2] The pleading appended and

---

[2]Only Jay remains as a respondent to the appeal. On May 24, 1989, we granted Paramount's application for an order to dismiss the appeal as to defendant and respondent Dott. Paramount earlier dismissed its claims against defendant Claus, with prejudice.

We recognize that Jay did not institute the underlying action. Said action was commenced by Jorge, Claus and Dott, who named Jay as a defendant. However, as indicated, Jay later agreed to be bound as if he were a plaintiff. A person who had no part in the commencement of the action, but who participated in it at a later time, may be held liable for malicious prosecution. (*Lujan* v. *Gordon* (1977) 70 Cal.App.3d 260, 263-264 [138 Cal.Rptr. 654].) And one

incorporated by reference the first amended complaint in the underlying action, the statement of decision and the judgment.

Paramount alleged in substance:

The complaint in the underlying action asserted multiple claims and causes of action against Paramount and Moskowitz, based upon alleged breaches of fiduciary duty, and sought an accounting, injunctive relief, appointment of a receiver, dissolution of Paramount and declaratory relief. Prior to trial, Claus, Dott and Jay asserted that their complaint consisted of 18 separate and distinct claims and/or causes of action. As a consequence, the trial court divided the action into 17 different claims and/or causes of action, each of which was tried separately. Claus, Dott and Jay pursued the action to its legal termination in Paramount's favor. Virtually all the time during discovery and trial was spent litigating 15 groundless claims on which Claus, Dott and Jay did not prevail. At the time of filing their complaint, and continuing through the trial of the action, Claus, Dott and Jay knew or should have known there was no merit or factual foundation for each and all of the 15 claims on which Paramount prevailed. Claus, Dott and Jay failed to conduct a reasonable investigation as to the merits of their action, which they prosecuted without probable cause and with malice.

Claus, Dott and Jay demurred solely on the ground Paramount did not allege a favorable termination of the underlying action. They maintained they prevailed in the underlying action because upon their request, an accounting was had and was determined to be suitable, and the extended partnership termination date and Cherna Moskowitz's election were both rescinded.

The trial court sustained the demurrer to the original complaint without leave to amend. In ruling on the matter, the trial court observed that under Paramount's theory, "in every case where people allege four or five different causes of action, and they happen to lose on one or two, they'd be subject to [a] malicious prosecution suit." This appeal followed.

CONTENTIONS

Paramount contends it properly alleged the element of favorable termination because under the primary right theory, each primary right asserted

who did not file the complaint may nevertheless be liable for being instrumental in " 'putting the law in motion.' " (*Jacques Interiors* v. *Petrak* (1987) 188 Cal.App.3d 1363, 1372 [234 Cal.Rptr. 44]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 431, p. 514.)

and tried unsuccessfully gives rise to a cause of action for malicious prosecution.

DISCUSSION

1. *Standard of appellate review.*

■ The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264].) ■ The allegations are regarded as true and are liberally construed with a view to attaining substantial justice. (*Shaeffer* v. *State of California* (1970) 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347]; *King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].)

The reviewing court is not concerned with a plaintiff's possible inability to prove the allegations but only that the party may be entitled to some relief. (*Highlanders, Inc.* v. *Olsan* (1978) 77 Cal.App.3d 690, 697 [143 Cal.Rptr. 679]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

2. *General principles.*

■ "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress [citation]. [Fn. omitted.]" (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50-51 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

In addition, "[t]he judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals '. . . as instruments with which to maliciously injure their fellow men.' [Citation.]" (*Bertero, supra,* 13 Cal.3d at p. 51.)

■ The elements of a cause of action for malicious prosecution are that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Bertero, supra,* 13 Cal.3d at p. 50.)

■ The theory underlying the requirement of favorable termination is that " 'it tends to indicate the innocence' " of the defendant in the underlying action, and coupled with the other elements of lack of probable cause and malice, establishes the tort of malicious prosecution. (*Lackner* v. *La-Croix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393].) Absent a favorable termination of the underlying suit, a malicious prosecution action would constitute an impermissible collateral attack upon the judgment of a duly constituted court. (*Murdock* v. *Gerth* (1944) 65 Cal.App.2d 170, 177 [150 P.2d 489], criticized on other grounds in *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 878, fn. 7 [254 Cal.Rptr. 336, 765 P.2d 498].)

■ 3. *Favorable termination of severable causes of action allows claim for malicious prosecution thereof.*

*Singleton* v. *Perry* (1955) 45 Cal.2d 489, 497-498 [289 P.2d 794], held that in order to maintain an action for malicious prosecution, " ' "it is *not necessary that the whole proceeding be utterly groundless,* for, if groundless charges are maliciously and without probable cause, coupled with others which are well founded, they are not on that account the less injurious, and, therefore, constitute a valid cause of action." . . . [¶] . . . . [¶] Indeed, it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability, because of the injured party's inability to divide his damages between the two with delicate nicety.' " (Italics added.)

In *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], the defendant in a malicious prosecution action had previously filed an action against the plaintiff for money damages, and also asserted therein a claim to plaintiff's real property on a theory of fraudulent conveyance. The defendant in the malicious prosecution action prevailed in the underlying action only as to the claim for damages. (*Id.,* at pp. 377-378.) The plaintiff then brought suit for malicious prosecution. The Supreme Court held the damage and real property claims were *"severable" (id.,* at p. 378, italics added), and citing *Singleton,* found the complaint stated a cause of action for malicious prosecution based on the claim of fraudulent conveyance, despite the merit of the claim on which the defendant had prevailed. (*Albertson, supra,* at p. 385.)

*Freidberg* v. *Cox* (1987) 197 Cal.App.3d 381 [242 Cal.Rptr. 851] is factually distinguishable but consistent with *Albertson*. In *Freidberg*, the various claims which were alleged in the underlying action were not severable, thereby precluding the partially successful defendant in the underlying action from maintaining an action for malicious prosecution. (*Id.,* at p. 388.)

In *Freidberg*, attorneys Freidberg and Ingraham acted as cocounsel in certain litigation which generated attorney's fees in the amount of $86,000. When they could not agree on a division of fees, Ingraham filed suit against Freidberg, alleging he was entitled to recover $43,000 as the reasonable value of services rendered. In addition, Ingraham alleged theories of joint venture and tortious interference with contract, which theories were the subject of a motion for nonsuit and were removed from jury consideration. The jury awarded Ingraham damages in the amount of $12,900 as the reasonable value of his services. (*Freidberg* v. *Cox, supra,* 197 Cal.App.3d at pp. 383-384.)

Freidberg then sued for malicious prosecution, alleging the joint venture and tortious interference counts were prosecuted maliciously. Ingraham successfully moved for summary judgment on the basis the underlying action terminated in Ingraham's favor. (*Freidberg, supra*, 197 Cal.App.3d at p. 384.)

The *Freidberg* court affirmed. Distinguishing *Albertson,* the *Freidberg* court held the underlying action did not terminate in Freidberg's favor because the various theories alleged by Ingraham were not severable and independent. Separate prosecution of Ingraham's claims would have constituted splitting a cause of action. For example, had Ingraham sued to recover attorney's fees solely on the theory of quantum meruit and the matter had gone to final judgment, a later action to recover attorney's fees based on joint venture or tortious interference with contract would have been foreclosed by the doctrine of res judicata. Because there was but one injury and one cause of action for recovery of attorney's fees, the action did not terminate in Freidberg's favor. (*Freidberg* v. *Cox, supra,* 197 Cal.App.3d at pp. 388-389.)

■ 4. *Paramount properly alleged a favorable termination because underlying action involved severable claims which were adjudicated in its favor.*

The two claims on which Jay was granted some relief in equity resulted in the rescissions of the extended partnership termination date and the election of Cherna Moskowitz as general partner.

The many claims concerning, inter alia, the Ziggurat transaction, the McKnight transaction, the transaction involving senior citizen housing, breach of a management agreement, conversion, partnership distributions, Moskowitz purchases of partnership interests, transactions involving Moskowitz and entities he controlled, payments to Moskowitz for services, all appear to have been severable from the claims on which Jay prevailed. ■ At a minimum, the question of severability requires factual determinations which cannot be made at the demurrer stage.

■ Jay, however, argues that *Freidberg* is analogous to this fact situation while *Albertson* is distinguishable because the underlying action here involved but one cause of action for breach of fiduciary duty. The argument lacks merit.

Here, as in *Albertson,* the claims appear to be severable. For instance, had Jay filed suit in 1980 to invalidate the Ziggurat transaction, a later action by Jay challenging Moskowitz's purchases in 1982 of interests of withdrawing limited partners would not have been foreclosed by the doctrine of res judicata. Similarly, litigation relating to the validity of amendments to partnership articles would not appear to preclude a later suit alleging conversion by Moskowitz of partnership assets.

Thus, the fact that Jay's numerous claims may all be broadly deemed to be alleged breaches of fiduciary duty does not enable Jay to sidestep the severability rule as applied in *Albertson* and *Freidberg.* Accordingly, Paramount properly plead a favorable termination of the underlying action as to the causes of action severable from those on which Jay prevailed.

a.  *Murdock case unavailing to Jay.*

Jay also relies on a passage in *Murdock v. Gerth, supra,* 65 Cal.App.2d at page 177, which states "in determining whether a proceeding alleged to have been maliciously prosecuted has been terminated in favor of the party injured by such proceeding *consideration should be given to the judgment as a whole.*" (Italics added.) In *Murdock,* the plaintiff in the underlying action sued on a $5,050 indebtedness and obtained a judgment for $200. *Murdock* concluded that while "such sum was only a small part of the amount sued for . . . [t]he fact remains that the judgment, . . . , was not in favor of the defendant" in the underlying action. (*Id.,* at p. 177.) Accordingly, the plaintiff in the underlying action had probable cause to institute that action. (*Id.,* at p. 178.)

Relying on *Murdock,* Jay argues that while he obtained less relief than prayed for in the underlying action, because he was partially successful, Paramount cannot plead a favorable termination of that suit.

*Murdock* is factually distinguishable and inapposite. The case involved a partnership dispute between Drs. Wolf and Murdock, two veterinarians. On June 21, 1937, Wolf and Murdock executed a contract wherein Murdock agreed to buy out Wolf's interest in their animal hospital for $7,250, payable in monthly installments. Following further negotiations, on July 6, 1937, Wolf and Murdock entered into a "final" agreement, under the terms of which Wolf sold his interest to Murdock for $7,000, payable over a period of years. (*Murdock* v. *Gerth, supra,* 65 Cal.App.2d at pp. 172-174.) Two years later, attorney Gerth on Wolf's behalf caused suit to be filed against Murdock to enforce the terms and conditions of the original June 21, 1937, contract. (*Id.,* at p. 175.)

The matter was tried and judgment was rendered. The trial court held no obligation ever accrued under the June 21, 1937, contract alleged in Wolf's complaint, as that agreement had been rescinded by the parties. Wolf obtained a $200 judgment, however, based on the July 6, 1937, agreement. (*Murdock, supra,* 65 Cal.App.3d at p. 176.) Murdock then commenced a malicious prosecution action against Wolf. Giving "consideration . . . to the judgment as a whole[,]" the *Murdock* court held that because Wolf had obtained a judgment against Murdock, Murdock could not show the underlying action was instituted without probable cause. (*Id.,* at pp. 177-178.)

*Murdock* is unavailing to Jay. In *Murdock,* as in *Freidberg* v. *Cox, supra,* 197 Cal.App.3d at page 388, there are no severable claims. Wolf had a single cause of action against Murdock, namely, to enforce a contract for the sale of his partnership interest to Murdock. In contrast, as discussed *ante,* here as in *Albertson* v. *Raboff, supra,* 46 Cal.2d at page 382, the judgment is severable and constitutes a termination of a severable part of the proceeding in the defendant's favor.

Separately, Jay relies on language in *Freidberg* v. *Cox, supra,* 197 Cal.App.3d at page 387, stating that " 'there must be a favorable termination of the entire action.' " That portion of *Freidberg* is at odds with the balance of the opinion and with the severability rule of *Albertson* v. *Raboff, supra,* 46 Cal.2d at page 382, and we decline to follow it.[3]

## CONCLUSION

The element of favorable termination tends to show the innocence of the defendant in the underlying action. (*Lackner* v. *LaCroix, supra,* 25 Cal.3d

---

[3] Paramount has proposed that in determining which party achieved a favorable termination of the underlying action, we adopt a prevailing party standard similar to the one utilized to determine an entitlement to attorney's fees under Civil Code section 1717. Because the Supreme Court has already laid down a severability test for favorable termination (*Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 382), we decline to graft Civil Code section 1717 principles onto the tort of malicious prosecution.

at p. 750.) It also serves to prevent a collateral attack on the underlying judgment. (*Murdock* v. *Gerth, supra,* 65 Cal.App.2d at p. 177.) Neither principle is violated where a malicious prosecution action rests on a severable part of the proceeding which terminated in the defendant's favor. (*Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 382.)

■ Because the tort of malicious prosecution has the potential to impose a chilling effect on a citizen's willingness to bring a civil dispute to court, the tort traditionally has been regarded as a disfavored cause of action. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 872.) However, there is no reason for permitting plaintiffs to pursue "shotgun tactics" by proceeding on counts and theories which they know or should know to be groundless. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 57.)[4] A malicious prosecution action following a partial favorable termination of a severable underlying action, as approved by the Supreme Court in *Albertson,* reasonably accommodates these competing policies.

### DISPOSITION

The order is reversed.

Paramount to recover costs on appeal.

Danielson, J., and Arabian, J., concurred.

---

[4] Although *Bertero*'s denunciation of "shotgun tactics" arose in the context of a discussion of probable cause for malicious prosecution (*Bertero* v. *National General Corp., supra,* at p. 57), its rationale is equally applicable to the element of favorable termination.