[No. B072676. Second Dist., Div. Six. Aug. 16, 1994.]

CYRUS TABAZ, Plaintiff and Appellant, v.
CAL FED FINANCE et al., Defendants and Respondents.

**COUNSEL**

Haight, Brown & Bonesteel, Roy G. Weatherup, Armando M. Galvan, Freeman, Freeman & Refkin and Martin N. Refkin for Plaintiff and Appellant.

Diane M. Matsinger, Quinn, Emanuel, Urquhart & Oliver, Eric J. Emanuel and John S. Purcell for Defendants and Respondents.

**OPINION**

**GILBERT, J.—** ▮ Parties enter into an agreement for the sale and purchase of a note. After the sale, the purchaser sues the seller for breach of

contract, fraud, conspiracy and restitution. Seller prevails on all causes of action relating to the sale of the note. The trial court, however, finds that a payment due on the note was wrongfully received by seller after the close of escrow. The trial court therefore awards purchaser a judgment for that single payment.

May seller thereafter sue purchaser for malicious prosecution? Yes, because seller prevailed on causes of action that were severable from those on which purchaser prevailed. The rights relating to the sale of the note are different than those relating to payments due under the note.

Plaintiff Cyrus Tabaz brought a malicious prosecution action against Cal Fed Finance and its attorneys (collectively Cal Fed). Cal Fed successfully demurred on the ground Tabaz failed to plead a favorable termination of the underlying suit. We reverse.

## FACTS

Cyrus Tabaz owned a travel business. He sold the business to Brown Record Distributors, Inc. Tabaz received a note in the amount of $455,000, the makers of which were Brown, Harold McDowell and Howard Peach. In 1984, Tabaz decided to sell the note to Cal Fed Finance. Escrow was opened on October 12, 1984. Cal Fed paid $363,000 for the note. After deductions for commissions and other fees, a balance of $304,487.32 was left in escrow.

During 1984 there was an ongoing dispute between Tabaz and the makers of the note. The makers claimed they were entitled to certain offsets. Cal Fed apparently did not know of the dispute while escrow was pending. Contrary to the advice of its previous counsel, Cal Fed did not obtain estoppel or offset statements from the makers.

The Tabaz-Cal Fed escrow closed in early December 1984. No funds, however, were actually delivered from escrow to Tabaz. On January 2, 1985, a $6,680.97 monthly payment on the note was received and kept by Tabaz. Cal Fed never received any payment on the note.

In July 1985, Cal Fed filed the underlying lawsuit. Its first amended complaint sets forth the following causes of action against Tabaz:

"a) Breach of contract in which it was alleged that Tabaz failed to deliver a promissory note which was a negotiable instrument and to which there was no claim or defense by any person.

"b) Fraud in which it was alleged that Tabaz represented that the promissory note was a negotiable instrument, that there were no claims or defenses

to the note, and that the makers of the note would timely pay on the obligation.

"c) Conspiracy to defraud whereby Cal Fed Finance alleged that Tabaz failed to disclose alleged material facts to Cal Fed Finance which Cal Fed Finance claimed would have influenced its decision to enter into the transaction.

"d) Negligent misrepresentation which was alleged as an alternative to the intentional tort of fraud, alleging the same facts.

"e) Restitution of all money paid by Cal Fed Finance to Tabaz in exchange for returning the promissory note to Tabaz."

The case was tried before a court sitting without a jury. The court found in favor of Tabaz and against CalFed on each of the causes of action alleged in the first amended complaint. Nevertheless, the court awarded Cal Fed $6,680.97. The award was based on the finding that Tabaz took the January note payment which he knew belonged to Cal Fed because he had sold the note to Cal Fed 30 days before. The question of the January payment was never the subject of any discovery.

The defendants each demurred on the ground that the complaint shows on its face Tabaz did not prevail in the underlying action. The trial court sustained the demurrers without leave to amend.

## DISCUSSION

■ It is true that the plaintiff in a malicious prosecution action must plead and prove the underlying action terminated in his favor. (*Lackner* v. *La Croix* (1979) 25 Cal.3d 747, 749 [159 Cal.Rptr. 693, 602 P.2d 393].) That is not to say, however, that the plaintiff must show the entire underlying action was without merit. As our Supreme Court stated in *Singleton* v. *Perry* (1955) 45 Cal.2d 489, 497 [289 P.2d 794], " 'Indeed, it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability . . . .' "

In *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], the defendant in a malicious prosecution action sought in the underlying action both money damages and a lien on plaintiff's property. The defendant prevailed in the underlying action only as to his claim for damages. Our Supreme Court stated, ". . . that part of the judgment in the former action that determined

that defendant had no interest in or a right to a lien upon plaintiff's real property is now final and constitutes a termination of that separable part of the proceeding favorable to plaintiff." (*Id.* at p. 382.)

*Paramount General Hospital Co.* v. *Jay* (1989) 213 Cal.App.3d 360 [261 Cal.Rptr. 723] involved a dispute over the management of a partnership. Plaintiffs in the underlying action brought 17 claims or causes of action, each of which was tried separately. They prevailed on only two of the seventeen causes of action. They were granted rescission of an amendment to extend the partnership and rescission of a partnership election.

The partnership, Paramount, sued a former partner, Jay, for malicious prosecution. The trial court sustained Jay's demurrer on the ground that Paramount did not allege a favorable termination. The Court of Appeal reversed. It held that many of the claims in the underlying action involved separate transactions, all of which appeared to have been severable from the claims on which Jay prevailed. (*Paramount General Hospital Co.* v. *Jay, supra,* 213 Cal.App.3d 360, 370.) The court stated, "[T]he fact that Jay's numerous claims may all be broadly deemed to be alleged breaches of fiduciary duty does not enable Jay to sidestep the severability rule. . . ." (*Ibid.*)

Here, the claims pleaded by Cal Fed in its first amended complaint in the underlying case related to Tabaz's alleged promise and representations that the note as delivered into escrow was enforceable. These are separate and severable claims from the claim on which Cal Fed prevailed. That claim related to the conversion by Tabaz of a note payment for his own use 30 days after close of escrow. (See *Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390, 402 [177 Cal.Rptr. 398] "Surely one's breach of contract by failing to pay a note violates a 'primary right' which is separate from the 'primary right' not to have the note stolen [through a sham foreclosure].") That Cal Fed's claims may all be broadly deemed to have involved the note does not allow Cal Fed to escape the severability rule.

Cal Fed's reliance on *Friedberg* v. *Cox* (1987) 197 Cal.App.3d 381 [242 Cal.Rptr. 851] is misplaced. There, a case in which Ingraham and Friedberg acted as cocounsel generated attorney fees of $86,000. Ingraham sued Friedberg alleging he was entitled to half of the fees on the theories of reasonable value of services, joint venture and tortious interference with contract. Friedberg won a motion for nonsuit on the joint venture and tortious interference theories. The jury award Ingraham $12,900 for the reasonable value of his services.

Friedberg sued alleging the joint venture and tortious interference counts were maliciously prosecuted. Ingraham obtained summary judgment on the

ground that the underlying action terminated in his favor. The Court of Appeal affirmed on the ground that there was but a single action for the recovery of attorney fees. The causes of action alleged were not severable. Reasonable value of services, joint venture and tortious interference were simply different theories for recovering on the same injury: the failure to share attorney fees. (*Friedberg* v. *Cox, supra*, 197 Cal.App.3d 381, 388.)

*Friedberg* cites *Murdock* v. *Gerth* (1944) 65 Cal.App.2d 170, 177 [150 P.2d 489], for the proposition that, ". . . in determining whether a proceeding alleged to have been maliciously prosecuted has been terminated in favor of the party injured by such a proceeding, consideration should be given to the judgment as a whole." The proposition is true enough within the context of the facts on which *Friedberg* was decided; that is, where the causes of action are not severable. *Friedberg* expressly recognized, however, that the result would have been different had the causes of action been severable. (*Friedberg* v. *Cox, supra*, 197 Cal.App.3d 381, 387-388, citing *Albertson* v. *Raboff, supra*, 46 Cal.2d 375, *Sawyer* v. *First City Financial Corp., supra*, 124 Cal.App.3d 390, 398-399.)

Here, in contrast to the facts in *Friedberg*, causes of action alleging fraud and misrepresentation in inducing Cal Fed to enter into a contract to buy the note speak to a different injury than that caused by conversion of part of the proceeds of the note. Had the trial court not decided the issue of the January payment, Cal Fed could have brought a separate action to collect that payment received by Tabaz.

The judgment is reversed. Costs on appeal are awarded to Tabaz.

Stone (S. J.), P. J., and Yegan, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 3, 1994.