[No. B160031. Second Dist., Div. Seven. May 24, 2004.]

A. TOD HINDIN et al., Plaintiffs and Appellants, v.
EDWARD BARRY RUST, JR., et al., Defendants and Respondents.

1248

---

**COUNSEL**

Hillel Chodos for Plaintiffs and Appellants.

Robie & Matthai, James R. Robie; O'Melveny & Myers, Mark Wood, Patrick Lynch, John F. Daum and Matthew W. Close for Defendant and Respondent State Farm Mutual Automobile Insurance Company.

Munger, Tolles & Olson, Brad D. Brian, Lawrence C. Barth and Lisa J. Demsky for Defendants and Respondents William Montgomery, B. Gerald Reynolds and Frank Haines.

■

**OPINION**

**WOODS, J.—**

### *SUMMARY*

The issue we consider in this appeal is whether, in the context of a malicious prosecution action, Code of Civil Procedure section 437c, subdivision (f)(1) permits summary adjudication on the ground that some but not all claims in a single underlying action were supported by probable cause.[1] Because such a determination does not completely dispose of the entire malicious prosecution cause of action, we conclude that this statute does not permit summary adjudication under these circumstances. Therefore, in this case, the trial court's grant of summary adjudication on this ground (as well as its subsequent piecemeal grant of summary judgment as to the other claim in the underlying action) was improper and we reverse.

### *FACTUAL AND PROCEDURAL SYNOPSIS*

This case has already been before us several times. At the time of the last appeal, we summarized the case and proceedings to date as follows:

"All appellants appeal from a summary judgment in favor of all respondents and from a denial of appellants' motion for summary adjudication.

"Plaintiffs and appellants Kamaljit Singh, Surjit Multani, Teja Singh and Rajvinder Kaur are individuals ([i]ndividual [a]ppellants) who were represented in the underlying litigation by plaintiffs and appellants A. Tod Hindon [*sic*], A. Tod Hindon, a Professional Corporation, David Greenberg, Greenberg & Panish, a Professional Corporation and Joginder Shah ([a]ttorney [a]ppellants).[2]

"Defendant and respondent State Farm Mutual Automobile Insurance Company (State Farm) was the insurer and a party involved in the underlying litigation.

"Defendants and respondents Edward Barry Rust, Jr., Frank Robert Haines, Jerry Reynolds, William Adam Montgomery, Vincent Joseph Trosino, James Elwyn Rutrough, Charles C. Wehner, Rodney M. Perlman, a Professional Corporation, James Lawrence Crandall and Genson, Even, Crandall & Wade,

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The individual appellants are not parties to this appeal.

a Professional Corporation were attorneys for or representatives of State Farm in the underlying litigation. . . .[3]

"In November 1988, individual appellants received an uninsured motorist arbitration award against State Farm in the amount of $34,000.

"In December 1988, State Farm filed a superior court petition to vacate the arbitration award. State Farm voluntarily dismissed this petition with prejudice in 1991 and paid the award in full.

"Individual appellants filed a superior court civil suit against State Farm alleging religious and national origin discrimination by State Farm in the handling of their uninsured motorist claim (bad faith/discrimination). After four years of litigation and into the fourth month of jury trial, in 1993, this case was settled by mutual agreement, including an Agreement by Attorneys Supplemental to Settlement (Attorneys Agreement), for the sum of $30 million. The settlement amount was paid by State Farm.

"In mid 1993, appellants and State Farm sought judicial clarification of the Attorneys Agreement with respect to the use and publication of certain internal documents produced by State Farm during the bad faith/discrimination litigation. The documents and information were produced through discovery and subpoena, not pursuant to the settlement agreement. The Los Angeles Superior Court ordered that appellants were not precluded by the Attorneys Agreement from copying, publishing and disseminating to third persons any document or information procured from State Farm at or prior to the trial. State Farm did not take further action regarding this order and it became final.

"Approximately one year after settlement and payment of the $30 million, State Farm obtained information indicating that the individual appellants' insurance claims were, in part, fraudulent. State Farm retained a law firm, which in turn employed investigators, to pursue this information. The investigation produced seven sworn statements from three witnesses, which indicated that the uninsured motorist claims were based on fraud and that appellants had withheld information during the discovery and litigation phases of those claims.

"The investigation was turned over to the FBI and the Los Angeles District Attorney. The FBI obtained a 'body wire' recording of a witness' statement, which corroborated the sworn statements. The FBI agent in charge and the

---

[3] Respondents Montgomery, Reynolds and Haines have joined in State Farm's brief on the appeal before us now.

district attorney Investigator both told State Farm representatives that the fraud case appeared well founded and worth prosecuting.

"In January 1996, in the Arizona Superior Court, State Farm sought to suppress the same documents claiming that attorney appellants had illegally provided copies to Arizona plaintiff's counsel in violation of the Attorneys Agreement and a Los Angeles Superior Court confidentiality order. A copy of the Los Angeles Superior Court order was presented in response. Two days thereafter, State Farm withdrew its motion to suppress. The Arizona Superior Court issued sanctions against State Farm for having submitted a motion which was '. . . eminently deniable from the onset . . . .' The Arizona Superior Court found that State Farm's claim of confidentiality was without merit.

"Three weeks following the imposition of sanctions by the Arizona Superior Court, on February 14, 1996, State Farm filed a federal court action seeking to recover the $30 million payment and return of the internal State Farm documents.

"Appellants filed motions to dismiss State Farm's restitution action on the grounds that (a) State Farm's claims were barred by res judicata and collateral estoppel; (b) that State Farm's claims were precluded under the litigation privilege (Civ. Code, § 47, subd. (b)); (c) that said claims were time barred; and (d) that the superior court order was controlling with respect to the documents.

"Counsel for State Farm in the federal court case acknowledged the existence of the Los Angeles Superior Court order and on April 1, 1996 amended its complaint by striking the document claims. In total, 45 days elapsed between the filing of State Farm's federal action and its abandonment of the document claim.

"State Farm argues that through a 'bureaucratic foul-up,' the previous Los Angeles Superior Court order was not 'brought effectively' to the attention of the lawyers drafting the complaint. State Farm argues that malicious prosecution liability should not be predicated on a 'pleading blunder' which was promptly withdrawn. However, State Farm has not referred this court to any evidence in support of its 'bureaucratic foul-up—ineffective communication—pleading blunder' argument.

"The federal district court granted appellants' motions to dismiss on the litigation privilege ground. The Ninth Circuit Court of Appeal affirmed the order of dismissal. The individual and attorney appellants filed separate malicious prosecution actions against State Farm. These cases were consolidated in the superior court and on this appeal.

"State Farm filed a motion for summary judgment, which was granted. State Farm did not file a motion for summary adjudication. Appellants' motion for summary adjudication was denied. This appeal followed." (*Hindin v. Rust.*(Feb. 14, 2001, B135446) [nonpub. opn.].)

After a discussion of legal principles applicable to summary judgment and to the issue of probable cause in malicious prosecution cases, we said: "From this point forward, we discuss separately the issues as to the individual appellants and attorney appellants. The issues relating to the documents apply only to the attorney appellants." (*Hindin v. Rust, supra,* B135446.)

"As to the individual appellants, we find that there was legal and factual probable cause to bring the underlying federal restitution action and, therefore, affirm the summary judgment on the individual appellants' complaint for malicious prosecution. With respect to the individual appellants, the conclusions reached in our independent review coincide with those of the trial court, Hon. James R. Dunn, presiding. This opinion will not be published in the official reports. Therefore, we incorporate by reference, as though set forth in full, Judge Dunn's oral ruling from the bench as it relates to the individual appellants. . . ." (*Hindin v. Rust, supra,* B135446.)

Under the heading "Attorney Appellants," we said: "It cannot in reason be argued that there was probable cause to seek return of the disputed documents. The Los Angeles Superior Court ruled unequivocally that attorney appellants had the right to retain, copy and disseminate said documents to third persons. In fact, these same documents had been used in litigation outside California and were virtually in the public domain—so much for confidentiality. Three weeks before filing its federal action, State Farm was sanctioned by the Arizona Superior Court for falsely claiming said documents were confidential.

"As to the 'bureaucratic foul-up' in not 'effectively' bringing the Los Angeles Superior Court order to the attention of the lawyers drafting the complaint, the bureaucracy and ineffective communication are internal problems for State Farm. They may be reasons, but they are not excuses. State Farm has ignored the Attorneys Agreement, the Los Angeles Superior Court order specifically determining that attorney appellants are at liberty to retain, copy and disseminate the disputed documents and, finally, the juxtaposition of the Arizona Superior Court sanctions to the filing of its federal case in California.

"All of the aforementioned facts militate against any claim of probable cause in the filing of the federal court equitable restitution claim for return of the disputed documents. Each of these events and facts was within the

institutional knowledge of State Farm. Claims of bureaucratic foul-up, ineffective communication and pleading blunder are not persuasive.

"We find that State Farm's federal court claim for equitable restitution to recover the disputed documents was not objectively tenable. Considering the facts known before filing that claim, no reasonable attorney would believe that it was legally or factually tenable. All reasonable attorneys would believe that said claim was totally and completely without merit.

"State Farm argues that it dismissed its federal claim for equitable restitution promptly upon learning that it was without merit, to wit: 45 days after filing the federal case. Therefore, the public policy encouraging the early dismissal of unmeritorious lawsuits should immunize State Farm from exposure to malicious prosecution liability. (*Sangster v. Paetkau,* [(1998)] 68 Cal.App.4th 151, 165; *Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 571 [264 Cal.Rptr. 883].) This argument misses the point. Under the facts existent and institutionally known to State Farm, the equitable restitution action for return of the disputed documents should not have been filed in the first instance.

"Furthermore, we cannot hold as a matter of law that the 45-day period between filing and dismissal constitutes 'prompt and early dismissal' of an unmeritorious cause, considering the pre-filing facts of this case..

"As indicated above, State Farm made only a motion for summary judgment, not a motion for summary adjudication. (Compare Code Civ. Proc., § 437c, subd. [(a)] with § 437c, subd. (f)(1).) We find that as to the disputed documents, there is a triable issue of material fact, to wit: was the State Farm federal action to recover the disputed documents initiated with malice? Therefore, the order granting summary judgment with respect to the attorney appellants is reversed.

"Some clarification may be required. This opinion is not intended in any manner to determine the issue of the existence or absence of malice in filing the federal claim for return of the documents. Nor does it address the probable cause issues vis-à-vis the attorney appellants attendant to claims other than that for return of the disputed documents. Those issues are open for determination upon remand." (*Hindin v. Rust, supra,* B135446.)

As to the appellants' motion for summary adjudication, we said: "Appellants' motion for summary adjudication, in effect, sought a judicial determination that State Farm did not have probable cause for instituting its federal court action. Our conclusions regarding probable cause, discussed above, render moot the issue raised by appellants in their appeal from the order denying motion for summary adjudication." (*Hindin v. Rust, supra,* B135446.)

The appeal from the order denying appellants' motion for summary adjudication was dismissed, the summary judgment as to the individual appellants was affirmed and the summary judgment as to the attorney appellants was reversed, with the case remanded for further proceedings.

On remand, the attorney appellants filed an affidavit to disqualify Judge Dunn and the matter was reassigned to the Honorable Frances Rothschild. State Farm then moved for summary adjudication of the restitution claim on the ground that there was probable cause for that claim only. When this motion was granted, the attorney appellants filed a writ petition, contending that the trial court had improperly relied upon the law of the case doctrine in finding probable cause for State Farm's pursuit of its restitution claim against the attorney appellants simply because, in our prior opinion, we had upheld the trial court's finding of probable cause as to the individual claimants (among other issues).[4] We notified the parties that we intended to issue an order requiring the trial court to vacate its prior order and enter a new and different order denying State Farm's motion for summary adjudication because our prior decision had not resolved the probable cause issues relative to the attorney appellants. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893].)

The trial court declined to vacate its order granting summary adjudication, and State Farm filed opposition to the writ petition, arguing that the attorney appellants had mischaracterized the basis for the trial court's order. According to State Farm, its argument was that its underlying claim depended in part upon showing an objectively tenable basis for seeking to rescind its settlement agreement with the individual claimants and then, in turn, that it had the right to impose a constructive trust on the funds the claimants had paid to their attorneys; in any event, it argued, a de novo review of the evidence supported the trial court's ruling.

While the writ petition was still pending, State Farm moved for summary judgment on the ground that the malicious prosecution action, to the extent it was based on the document claim, was barred by the one-year statute of limitations. It argued that the restitution claim and the document claim were severable; because State Farm withdrew its allegations in support of the document claim in the district court, the federal appeal did not toll the statute of limitations with respect to that claim. The attorney appellants requested and we issued a stay order. We ultimately dissolved the stay and dismissed the writ petition without opinion. Over the attorney appellants' opposition,

---

[4] The attorney appellants also argued that summary adjudication was improper for failure to completely dispose of the entire (single) malicious prosecution cause of action.

the trial court determined that the remainder of the attorney appellants' malicious prosecution action was time-barred. Judgment was entered and this appeal followed.

## DISCUSSION

*Because the Determination That State Farm Had Probable Cause to Bring One of Its Two Claims in Federal Court Did Not Completely Dispose of the Attorney Appellants' Malicious Prosecution Cause of Action, the Trial Court Erred in Granting Summary Adjudication*

.

Appellant attorneys filed a lawsuit for malicious prosecution following State Farm's unsuccessful prosecution of its lawsuit in federal court seeking (a) restitution of $30 million paid in settlement of a bad faith action, based on the allegedly fraudulent conduct of the attorney appellants' clients; and (b) return of internal State Farm documents produced during the bad faith litigation, as well as related equitable relief, based on the attorney appellants' alleged violation of one of the settlement agreements signed in connection with resolution of the bad faith case. The attorney appellants argue, whether State Farm's claims in the underlying federal action are properly characterized as distinct or interrelated, their malicious prosecution action contains but a single cause of action within the meaning of section 437c, subdivision (f)(1) and, therefore, the trial court impermissibly granted State Farm's motion for summary adjudication directed only to the restitution claim. We agree.

Section 437c, subdivision (f)(1) provides: "A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages [as specified in Civil Code section 3294], or one or more issues of duty . . . . *A motion for summary adjudication shall be granted only if it completely disposes of a cause of action,* an affirmative defense, a claim for damages, or an issue of duty." (Italics added.)

Prior to the 1990 amendments to the summary judgment law, a party could move for "summary adjudication of issues" either by itself or as an alternative to summary judgment. (Former § 437c, subd. (f), Stats. 1989, ch. 1416, § 16, pp. 6229–6230.) If the evidence supported a finding that there were no triable issues of fact as to some but not all of the issues involved in the action, the trial court was required to specify that those issues were "without substantial controversy." (*Ibid.*) In 1990 the Legislature amended former section 437c, subdivision (f) "to stop the practice of adjudication of facts or adjudication of issues that do not completely dispose of a cause of action or a defense." (Stats. 1990, ch. 1561, § 1, p. 7330; see *DeCastro West Chodorow & Burns, Inc. v. Superior Court* (1996) 47 Cal.App.4th 410, 418–419

[54 Cal.Rptr.2d 792] [motion for summary adjudication may not attack one particular compensatory damage claim if granting the motion would leave intact the cause of action containing claims for the remaining items of compensatory damages].)[5] New subdivision (f), effective January 1, 1991, eliminated the reference to "issues without substantial controversy" and provided instead for a motion for summary adjudication directed to an entire cause of action: "If it is contended that one or more causes of action within an action has no merit or that there is no defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both . . . any party may move for summary adjudication as to that cause or causes of action [or] that affirmative defense . . . ." (Stats. 1990, ch. 1561, § 2, pp. 7331–7332.)[6]

In *Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848 [16 Cal.Rptr.2d 458], the Court of Appeal considered whether the 1990 revision to section 437c, subdivision (f) permitted a motion for summary adjudication challenging "a separate and distinct alleged obligation or claim" even though combined with other wrongful acts and pleaded as a single "cause of action." (*Lilienthal,* at p. 1854.) The Court of Appeal issued a peremptory writ of mandate directing the trial court to consider the motion on its merits: "In our judgment the clearly articulated legislative intent of section 437c, subdivision (f), is effectuated by applying the section in a manner which would provide for the determination on the merits of summary adjudication motions involving separate and distinct wrongful acts which are combined in the same cause of action. To rule otherwise would defeat the time and cost saving purposes of the amendment and allow a cause of action in its entirety to proceed to trial even where, as here, a separate and distinct alleged obligation or claim may be summarily defeated by summary adjudication." (*Id.* at pp. 1854–1855; accord, *Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th

---

[5] In its May 1990 report the Senate Committee on the Judiciary noted that this amendment to former section 437c, subdivision (f) had been sponsored by the California Judges Association, which explained, "[I]t is a waste of court time to attempt to resolve issues if the resolution of those issues will not result in summary adjudication of a cause of action or affirmative defense. Since the cause of action must still be tried, much of the same evidence will be considered by the court at the time of trial. This bill would instead require summary adjudication of issues only where an entire cause of action, affirmative defense or claim for punitive damages can be resolved."

[6] The Legislature's intent to confine summary adjudication motions to challenges to an entire cause of action was reconfirmed in 1993 when former section 437c, subdivision (f) was again amended, this time adding a new second sentence to what then became subdivision (f)(1): "A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." A June 29, 1993, analysis prepared for the Senate Committee on the Judiciary explains that the proposed amendment would "clarify existing law relating to summary adjudication motions and codify existing case law and legislative intent that sets the standard for granting summary adjudication."

1174, 1188 [10 Cal.Rptr.3d 52] [allegations defendant employer violated FEHA by permitting hostile-environment sexual harassment and retaliating after employee complained, discrete grounds for liability, constitute separate cause of action for purposes of § 437c, subd. (f)(1)]; *Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1116 [78 Cal.Rptr.2d 478] [claims that bank improperly paid checks in 1991 and 1992 properly challenged in motion for summary adjudication as untimely although combined in single "cause of action" with claims asserting same theory of liability but involving checks paid in 1995 and 1996].)

■ Whether a complaint in fact asserts one or more causes of action for pleading purposes depends on whether it alleges invasion of one or more primary rights. "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (*Crowley*) [suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause].) "As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the *legal theory* on which liability for that injury is premised." (*Ibid.*)

■ The manner in which a plaintiff elects to organize his or her claims within the body of the complaint is irrelevant to determining the number of causes of action alleged under the primary right theory. "[I]f a plaintiff states several purported causes of action which allege an invasion of the same primary right he has actually stated only one cause of action. On the other hand, if a plaintiff alleges that the defendant's single wrongful act invaded two different primary rights, he has stated two causes of action, and this is so even though the two invasions are pleaded in a single count of the complaint." (*Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1364 [53 Cal.Rptr.2d 481].) Specifically in the context of a malicious prosecution action, the Supreme Court has explained, "When a complaint alleges multiple theories of liability or 'counts,' the counts 'are merely ways of stating the same cause of action differently.' [Citation.] Accordingly, the only way a litigant can show probable cause for the cause of action as a whole—or for the 'primary right'—is to show probable cause for each of the counts or theories alleged. In this event the whole is indeed the sum of the parts." (*Crowley, supra,* 8 Cal.4th at p. 683, fn. 11; and see *Jenkins v. Pope* (1990) 217 Cal.App.3d 1292, fn. 3 [266 Cal.Rptr. 557] ["Violation of a single

primary right gives rise to only one cause of action, even if a plaintiff has various forms of relief or theories of relief available"].)

In this case the underlying federal action by State Farm apparently asserted the invasion of two different primary rights by the attorney appellants, the attorneys for State Farm's former insureds—one based in contract and another grounded in the right to be free from fraudulent conduct.[7] But the attorney appellants' malicious prosecution action sought to vindicate a single primary right—the right to be free from defending against a lawsuit initiated with malice and without probable cause.[8] Although State Farm allegedly breached that right in two ways, it nevertheless remained a single right. (*Crowley, supra,* 8 Cal.4th at p. 683 ["under the primary right theory a properly pleaded cause of action must be premised on a single primary right even thought it states multiple grounds of liability"]; see *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

State Farm argues that *Crowley, supra,* 8 Cal.4th at pages 678 to 679, "actually supports [its] position" as "it holds that each separate theory of liability can support a separate malicious prosecution claim and could be sued upon independently." Quite to the contrary, the Supreme Court in *Crowley* specifically observed that, if Crowley (the malicious prosecution plaintiff) had filed a second malicious prosecution action alleging that the defendants lacked probable cause for the ground of their will contest that he had omitted

---

[7] Whether one or more primary rights has been asserted in the underlying litigation may have significance for assessing whether that action terminated favorably to the plaintiff in a subsequent malicious prosecution suit. (Compare *Tabaz v. Cal Fed Finance* (1994) 27 Cal.App.4th 789 [33 Cal.Rptr.2d 134] [if multiple claims in underlying action are severable, defendant who prevails on at least one severable cause of action may sue for malicious prosecution even though plaintiff obtained some recovery in underlying action] and *Paramount General Hospital Co. v. Jay* (1989) 213 Cal.App.3d 360 [261 Cal.Rptr. 723] [same] with *Freidberg v. Cox* (1987) 197 Cal.App.3d 381, 388 [242 Cal.Rptr. 851] [underlying fee action did not terminate favorably to defendant when plaintiff recovered substantial sum on one of alternative theories of liability asserted]; but see *Crowley, supra,* 8 Cal.4th at pp. 685–686 [questioning propriety of relying on the primary right theory to define the prior action for purposes of the favorable termination requirement of the law of malicious prosecution].) But if the malicious prosecution action seeks recovery for injuries suffered from defending against a single lawsuit, it necessarily asserts only a single primary right (and a single cause of action under section 437c, subdivision (f)(1)), regardless of the number of severable claims contained in the underlying action. (*Crowley, supra,* at pp. 681–682 [" 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.]"].)

[8] " 'To establish *a cause of action* for the malicious prosecution of *a civil proceeding,* a plaintiff must plead and prove that *the prior action* (1) was commenced by or at the direction of the defendant and was pursued to *a legal termination* in his, plaintiff's, favor [citations]; (2) *was brought without probable cause* [citations]; and (3) *was initiated with malice* [citations].' " (*Crowley, supra,* 8 Cal.4th at p. 676, citing *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608], italics added.)

from his original malicious prosecution complaint, "defendants could have invoked the primary right theory to support a plea in abatement [if the first action was still pending when the second was filed] or, if the [first action was concluded in defendants' favor], the bar of res judicata." (*Crowley, supra,* 8 Cal.4th. at p. 682.) " 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' " (*Id.* at pp. 681–682.)

As the Supreme Court reaffirmed in *Crowley, supra,* 8 Cal.4th at page 671, "a suit for malicious prosecution lies for bringing a[prior] action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause." As a matter of "policy under the substantive law of malicious prosecution," a defendant cannot escape liability by showing " 'partial probable cause' " for the underlying action. (*Id.* at pp. 678, 683.) It follows then that a motion for summary adjudication purporting to establish that some but not all of the multiple grounds for liability asserted in the prior action were brought with probable cause is improper for failure to completely dispose of an entire cause of action as required under subdivision (f)(1) of section 437c.[9] (*Crowley, supra,* 8 Cal.4th at pp. 678, italics added [" ' ". . . 'it is not necessary that the whole proceeding be utterly groundless, for, if groundless charges are maliciously and without probable cause, coupled with others which are well founded, they are not on that account less injurious, and, therefore, constitute *a valid cause of action*.' [Citations.]" ' "].)

Indeed, in this case, we have already determined that State Farm did *not* have probable cause to pursue the document claim in the underlying action.[10] In presenting evidence and authority to establish that its claim for restitution of the $30 million settlement was brought with probable cause, State Farm may have established an "issue[] without substantial controversy," but such "issues" are no longer proper bases for summary adjudication motions under section 437c, subdivision (f)(1).[11] However, the trial court is not without

[9] Such a motion also violates subdivisions (o) and (p)(1) of section 437c. Under subdivision (o) of section 437c, a cause of action has no merit if "[o]ne or more of the elements of the cause of action cannot be separately established," and under subdivision (p)(2), a "defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established." In its motion, by failing to contend with the Supreme Court's determination that partial probable cause suffices, State Farm failed to demonstrate that the attorney appellants could not establish that the federal action was brought without probable cause, a necessary element of their malicious prosecution cause of action.

[10] The argument that the attorney appellants had only a single cause of action for malicious prosecution was not addressed in the prior appeal.

[11] For all of the reasons stated herein, the motion for summary judgment related to the documents claim was improperly granted. Even if the motion could have been separately

procedural devices to deal with the issue of probable cause for the restitution claim. (See, e.g., *DeCastro West Chodorow & Burns, Inc. v. Superior Court, supra,* 47 Cal.App.4th at p. 423 [although motion for summary adjudication was improper for failure to dispose of entire cause of action, defendants could still pursue motion in limine or motion to strike]; *Macy's California, Inc. v. Superior Court* (1995) 41 Cal.App.4th 744, 748, fn. 2 [48 Cal.Rptr.2d 496].)

## DISPOSITION

The judgment is reversed and this matter is remanded to the trial court with instructions (1) to vacate the order granting State Farm's summary judgment motion on statute of limitations grounds and enter an order denying that motion, (2) to vacate the order granting State Farm's motion for summary adjudication of the restitution claim and enter an order denying that motion and (3) for further proceedings consistent with this opinion. The parties are to bear their own costs of appeal.

Perluss, P. J., and Zelon, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 15, 2004.

---

asserted, however, the statute of limitations argument was erroneous, as it turned on the claim that the statutory period began to run before the termination of the entire action. Absent an order giving rise to a separate appealable judgment, "even where a single cause of action has been resolved, an action for malicious prosecution must await a favorable termination of the *entire* proceeding." (*Siebel v. Middlesteadt* (2004) 118 Cal.App.4th 406 [12 Cal.Rptr.3d 906]; *Jenkins v. Pope, supra,* 217 Cal.App.3d at pp. 1299–1301 [266 Cal.Rptr. 557].)