Filed 1/21/14  A. Todd Hindin v. State Farm Mutual Automobile Ins. Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| A. TODD HINDIN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant and Respondent. | B241540<br><br>(Los Angeles County<br>Super. Ct. No. BC190783) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carl J. West and Kenneth R. Freeman, Judges.  Affirmed.

Hillel Chodos for Plaintiffs and Appellants.

Robie & Matthai, Edith R. Matthai, Natalie A. Kouyoumdjian, Christy Gargalis; O'Melveny & Myers, Jeffrey J. Fowler; LHB Pacific Law Partners and Clarke B. Holland for Defendant and Respondent.

On May 11, 1998 A. Todd Hindin, Hindin's professional corporation, David Greenberg, Greenberg's professional corporations and Joginder Shah (collectively the Hindin parties) sued State Farm Mutual Automobile Insurance Company (State Farm), several State Farm senior executives and its in-house and outside counsel for malicious prosecution. In mid-2004 we reversed the trial court's order granting summary judgment and entering judgment in favor of State Farm and remanded the matter for further proceedings. (*Hindin v. Rust* (2004) 118 Cal.App.4th 1247.)[1] More than seven and one-half years later, on April 11, 2012, the trial court granted State Farm's motion to dismiss for delay in prosecution pursuant to Code of Civil Procedure section 583.320, subdivision (a)(3),[2] which establishes a mandatory three-year period for bringing a case to trial following an order on appeal granting a new trial. The Hindin parties contend they have diligently prosecuted the action and three years had not yet elapsed when the court dismissed the case against State Farm if one excludes the time during which the action was stayed or it was "impossible, impracticable, or futile" to bring it to trial, as provided in section 583.340, subdivisions (b) and (c). We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *A Brief Overview of the Initial Phases of this Protracted Litigation*

In 1993, after several years of litigation and in the fourth month of a jury trial, State Farm paid $30 million to the Hindin parties' clients—its former insureds—to settle their claims of bad faith and religious and national origin discrimination in State Farm's handling of their uninsured motorist claims. (The four individual plaintiffs had received a $34,000 uninsured motorist arbitration award based on a February 1987 automobile-versus-automobile accident, the full amount of available coverage; State Farm petitioned

---

[1] In addition to our published 2004 opinion, we have addressed a variety of issues arising from the malicious prosecution action in three nonpublished opinions, *Hindin v. Rust* (Nov. 30, 1998, B124816), *Hindin v. Rust* (Feb. 14, 2001, B135446) and *Hindin v. Wehner & Perlman* (Aug. 28, 2012, B216500, B223061, B228056).

[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

the superior court to vacate the award but voluntarily dismissed the petition with prejudice before it was heard.)  State Farm subsequently obtained information indicating the underlying insurance claims were, at least in part, fraudulent.  After an investigation by an outside law firm and investigators it had retained, on February 14, 1996 State Farm filed a federal court fraud action against its former insureds and their attorneys, the Hindin parties, seeking both restitution of the $30 million payment and return of internal documents it had produced during the bad faith/discrimination litigation, as well as related equitable relief to prevent further dissemination of those documents, based on the Hindin parties' alleged violation of one of the settlement agreements signed in connection with resolution of the bad faith case.

In response to a motion to dismiss State Farm's federal action, counsel for State Farm acknowledged the Los Angeles Superior Court had previously determined the Hindin parties were not precluded by the settlement agreements from copying or disseminating to third persons any of the documents obtained from State Farm in the bad faith/discrimination litigation (the "Drake order").  State Farm amended its federal complaint to eliminate the document claim on April 1, 1996, 45 days after it had initially been filed.  Several months later the federal district court dismissed the balance of State Farm's federal lawsuit on the ground the alleged misconduct of the Hindin parties and their clients was protected by Civil Code section 47, subdivision (b)'s litigation privilege; the Ninth Circuit affirmed the dismissal in November 1997.

The Hindin parties sued State Farm for malicious prosecution in May 1998, alleging, in brief, State Farm knew the settlement agreements did not prohibit dissemination of the documents produced in the bad faith/discrimination litigation and also knew any purportedly fraudulent misrepresentations in connection with the uninsured motorist claims were absolutely privileged under Civil Code section 47, subdivision (b).  In addition to State Farm the Hindin parties named as defendants State Farm's outside attorneys (sometimes referred to in our prior opinions as the Wehner defendants), State Farm's chairman and chief executive officer, Edward Rust, and two

3

other senior officers (the Rust defendants) and its general counsel and assistant general counsel (the Montgomery defendants).

The trial court granted State Farm and the other defendants' motion for summary judgment in August 1999, finding there was probable cause to file the underlying federal lawsuit. We reversed in a nonpublished decision in February 2001, finding "State Farm's federal court claim for equitable restitution to recover the disputed documents was not objectively tenable." (*Hindin v. Rust, supra,* B135446.)[3] We further found, "as to the disputed documents, there is a triable issue of material fact, to wit: was the State Farm federal action to recover the disputed documents initiated with malice." (*Ibid.*) We expressly declined to rule whether State Farm had probable cause to assert claims other than for return of the disputed documents: "Those issues are open for determination upon remand." (*Ibid.*)

On remand State Farm moved for summary adjudication of the restitution claim (that is, its effort to recover the $30 million settlement payment to the Hindin parties' clients, including the $18 million portion of that payment received by the Hindin parties in contingent legal fees) on the ground there had been probable cause to pursue that claim. The motion was granted. The Hindin parties sought writ relief in this court, contending the trial court had improperly relied on the law-of-the-case doctrine to find probable cause. State Farm's opposition argued the Hindin parties had mischaracterized the basis for the trial court's order, which it asserted was based on the court's finding there was an objectively tenable basis for seeking to rescind the settlement agreement and to impose a constructive trust on the funds the Hindin parties' clients had paid their attorneys. While the writ petition was pending, the trial court granted summary judgment on the remaining portion of the malicious prosecution action against State Farm (that is,

---

[3] State Farm's former insureds had filed a separate malicious prosecution action, and the two cases were consolidated in the trial court. Our 2001 nonpublished opinion, *Hindin v. Rust, supra,* B135446, affirmed the judgment entered against State Farm's former insureds, concluding, as to the them, "there was legal and factual probable cause to bring the underlying federal restitution action."

the document claim) on the ground it was time-barred. Because the entire action had now been concluded as to State Farm, we dismissed the writ petition without opinion; the trial court entered judgment in favor of State Farm; and the Hindin parties appealed.

In *Hindin v. Rust, supra*, 118 Cal.App.4th 1247 we held the trial court erred in granting summary adjudication on the restitution claim because the determination State Farm had probable cause to bring one of its two claims in federal court did not completely dispose of the Hindin parties' entire malicious prosecution cause of action: "[A] motion for summary adjudication purporting to establish that some but not all of the multiple grounds for liability asserted in the prior action were brought with probable cause is improper for failure to completely dispose of an entire cause of action as required under subdivision (f)(1) of section 437c." (*Id.* at p. 1259.)[4] Because summary adjudication on the restitution claim was improperly granted, the entire judgment in favor of State Farm was reversed. The remittitur was filed in the superior court on September 24, 2004.

2. *Proceedings Following Our 2004 Remand*

On remand, following a suggestion at the conclusion of our opinion, State Farm moved for an in limine order determining there was probable cause to bring the restitution claim in the federal action, striking portions of the Hindin parties' amended complaint and excluding certain evidence from trial. The trial court granted the motion on December 15, 2004. The Hindin parties petitioned this court for a peremptory writ of

---

[4] We explained, "[T]he underlying federal action by State Farm apparently asserted the invasion of two different primary rights by [the Hindin parties], the attorneys for State Farm's former insureds—one based in contract and another grounded in the right to be free from fraudulent conduct. But [the Hindin parties'] malicious prosecution action sought to vindicate a single primary right—the right to be free from defending against a lawsuit initiated with malice and without probable cause. Although State Farm allegedly breached that right in two ways, it nevertheless remained a single right." (*Hindin v. Rust, supra,* 118 Cal.App.4th at p. 1258, fns. omitted.) We added, however, that on remand "the trial court is not without procedural devices to deal with the issue of probable cause for the restitution claim," specifically citing case law suggesting use of a motion in limine or motion to strike under similar circumstances. (*Id.* at pp. 1259-1260.)

5

mandate on January 4, 2005. We issued a peremptory writ on November 1, 2006, directing the superior court to vacate its order and to reconsider the motion without application of the law-of-the-case doctrine. The remittitur was filed in the superior court on January 23, 2007.

On July 27, 2007 the trial court once again granted State Farm's motion in limine and struck portions of the Hindin parties' amended complaint based on the restitution claim in the underlying action. The court explained (1) there was probable cause to seek recovery of the settlement funds paid to the Hindin parties' clients (State Farm's former insureds), as previously determined by the trial court and affirmed by this court in 2001; (2) State Farm had not alleged claims for fraud against the Hindin parties themselves, as opposed to their clients; (3) case law supported a constructive trust theory of recovery of the contingent fee paid to the Hindin parties from a settlement allegedly obtained by their clients' fraud. The Hindin parties' petition for writ of mandate challenging that order, filed on September 4, 2007, was denied by this court on April 7, 2009.

The case proceeded in the trial court: As to State Farm, the only remaining issues at this point were malice and damages relating to the document claim. Over the next 16 months the trial court granted summary judgment motions and entered judgment in favor of the Wehner defendants (in May 2009),[5] the Rust defendants (in January 2010) and the Montgomery defendants (in August 2010). The Hindin parties filed timely notices of appeal from each of the judgments resolving those claims, and those appeals remained pending until August 28, 2012.[6]

---

[5] The Wehner defendants' motion for summary judgment was granted on July 27, 2007, the same day as the order granting State Farm's motion in limine. However, judgment was not entered until May 2009.

[6] Our decision in *Hindin v. Wehner & Perlman, supra*, B216500, B223061, B228056, reversed the judgments in each of the appeals, reaffirming our previous holding, as to all individual defendants, probable cause did not exist to bring the document claim. We also held triable issues of material fact existed on the question of malice with respect to that claim. But we agreed with the trial court that there was probable cause to bring the restitution/constructive trust claim against the Hindin parties.

In November 2010, as part of a joint case management report ordered on September 28, 2010, State Farm proposed a July 11, 2011 trial date,[7] as well as a pretrial schedule including dates for expert discovery. As discussed, at this point only the issues of malice and damages on the document claim remained to be tried against State Farm. The Hindin parties, on the other hand, requested trial of their claim be deferred until the pending appeals from the individual summary judgments were resolved; they also sought leave to conduct additional non-expert discovery, citing the interruption of scheduled discovery caused by the court's initial grant of summary judgment in mid-1999 and the consequent stay of all remaining discovery. At a hearing on November 5, 2010 the court indicated it was not inclined to postpone the trial against State Farm, but deferred issuing a final scheduling order or setting a trial date at that time. The court scheduled a further status conference for January 11, 2011, a date that was thereafter continued to January 27, 2011 and ultimately to April 4, 2011.

In a further joint case management report filed on March 30, 2011 for the April 4, 2011 status conference, the Hindin parties again urged the court to stay the trial until the pending appeals from the individual summary judgment motions were resolved and repeated their need for additional discovery. The Hindin parties estimated a one-year jury trial for the remaining issues against State Farm (malice and damages); State Farm, a one-week trial. At the April 4, 2011 conference the court allowed the Hindin parties to conduct additional discovery, but limited to "the viability of the document claim and damages that may be assessed on that claim"—that is, those matters that remained at issue in light of the various rulings by the court of appeal and the trial court. The court set a discovery cutoff of August 1, 2011 and scheduled trial for December 5, 2011. A petition to this court for a writ of mandate staying trial court proceedings against State Farm until we had resolved the appeals involving the individual defendants was summarily denied. (*Hindin v. Superior Court* (May 19, 2011, B232912).) On August 5,

---

[7] This trial date proposed by State Farm, but opposed by the Hindin parties, was within the mandatory three-year cutoff of section 583.320, subdivision (a)(3).

2011 the trial court postponed the trial date from December 5, 2011 to March 13, 2012 based on Hindin's medical condition (a broken leg).

    3. *Discovery Proceedings and the Stay of Discovery*

The original discovery schedule contemplated discovery under the supervision of a discovery referee from July 1998 through December 1999. All discovery was stayed on August 25, 1999 when the trial court granted State Farm's motion for summary judgment. Prior to that suspension of discovery, however, the Hindin parties had deposed 45 individuals over 65 sessions; State Farm and the individual defendants had deposed 14 individuals over 29 sessions. In July 2007 the Hindin parties requested leave to conduct additional discovery. The court denied the request, explaining, "Plaintiffs' proposed discovery would impermissibly expand the issues in this case, and the evidence sought is not 'essential to the issues to be adjudicated." The court also expressed the view that the Hindin parties had had ample opportunity to conduct discovery notwithstanding the discovery stay.

As discussed, following repeated requests by the Hindin parties to restart discovery, in April 2011 the trial court agreed to allow additional discovery limited to the viability of the document claim (that is, whether State Farm initiated or continued that claim with malice) and any damages that may have resulted from the prosecution of that claim and directed the parties to identify the individuals they intended to depose. In the subsequent joint filing the Hindin parties proposed deposing 64 additional witnesses. In response, the court ruled no justification had been offered for the discovery proposed and described the request as "a potentially abusive use of the discovery process in a case that has been pending for over thirteen years, and in which extensive discovery has been completed." The court ordered a maximum of 10 additional depositions, extended the discovery cutoff from August 1 to August 19, 2011 and cautioned the Hindin parties "[t]he fact that Plaintiffs have deferred noticing any deposition and/or propounding any written discovery directed to the remaining claims will not provide justification for extending the discovery cutoff date."

8

The Hindin parties did not take any additional depositions prior to the dismissal of their case against State Farm.

4. *Hindin's Medical Problems*

Hindin, one of the plaintiffs and also cocounsel for all the Hindin parties with significant responsibilities for discovery and trial preparation, was diagnosed with a serious heart condition on August 31, 2009. Hindin was instructed by his cardiologist to avoid stress and to drastically reduce his workload from that date through December 31, 2009 when he was authorized to fully return to work. The trial court granted a 90-day postponement of all deadlines due to Hindin's heart condition. A further 60-day postponement of deadlines was granted (over State Farm's objection) in mid-November 2009.

On July 22, 2011 Hindin broke his leg while on a family vacation. Its repair required surgery. That injury also exacerbated a preexisting spinal injury. Hindin has asserted, as a result of these conditions and the pain medication he was required to take, he was totally disabled from July 22, 2011 through December 31, 2011. Based on Hindin's medical condition, the court granted one 90-day continuance of pretrial deadlines and the trial date (which was postponed from December 5, 2011 to March 13, 2012), but denied a subsequent request to continue the trial.

5. *The Death of State Farm's Lead Counsel*

James Robie, State Farm's lead counsel, died in a diving accident on January 16, 2011. The following day State Farm requested a 30-day continuance of the status conference then set for January 27, 2011, as well as a similar postponement of other pretrial deadlines. On February 9, 2011 the court continued the status conference to April 4, 2011. As described by the court in its order granting the motion to dismiss, "After some back-and-forth on the message board about continuing the status conference to March 2, 2011 (a date which State Farm found to be 'acceptable'), the Court, due to scheduling conflicts from Messrs. Hindin and Chodos, continued the status conference to

9

April 4, 2011. However, the Court did not enter a stay of the litigation for all purposes after hearing of Mr. Robie's passing."

      6. *The Motion To Dismiss*

The trial court began hearing motions in limine on March 13, 2012, the date set for commencement of trial. On March 16, 2012 State Farm filed its written motion to dismiss the action for delay in prosecution—the motion at issue in this appeal. The motion was argued after the court received and reviewed the Hindin parties' opposition papers, which included a 106-page declaration from Hindin and 11 volumes of exhibits, and State Farm's reply. The court granted the motion and dismissed the action, ruling the Hindin parties had failed to bring the action to trial within the three-year deadline specified in section 583.320, subdivision (a)(3), following remand from our 2004 decision reversing the judgment in favor of State Farm.

In reaching its conclusion the trial court excluded from its calculation of the three-year period, pursuant to the tolling provisions of section 583.340, (1) 769 days between the trial court's December 15, 2004 order granting State Farm's motion in limine striking evidence in support of the restitution claim and the January 22, 2007 filing of the remittitur from this court directing the trial court to vacate its order and to reconsider the motion without application of the law-of-the-case doctrine; and (2) 620 days between the July 27, 2007 order again granting State Farm's motion in limine precluding use of evidence in support of the restitution claim and our April 6, 2009 order denying the Hindin parties' writ petition challenging that order. The court declined to exclude the periods during which Hindin's heart condition and broken leg and reinjured spine prevented him from working on the case, August 31, 2009 to December 31, 2009 and July 22, 2011 to December 31, 2011 (noting as to this latter period it was after the three-year statutory deadline had already expired), or the two-and-one-half month period following the death of James Robie, from January 17, 2011 to April 4, 2011. The court also ruled it was not impossible, impracticable or futile to bring the case to trial during the pendency of the appeals by the Hindin parties from the judgments entered on behalf

10

of the individual defendants or while the discovery stay remained in effect (that is, through April 4, 2011).[8] Thus, the court concluded there were 1,095 days—three years— of active litigation (from September 24, 2004 to December 15, 2004, January 23, 2007 to July 27, 2007, and April 7, 2009 to July 13, 2011) before State Farm filed its March 2012 motion to dismiss.

The Hindin parties filed a timely notice of appeal.

## DISCUSSION

1. *Sections 583.320 and 583.340 and the Standard of Review*

Section 583.320, subdivision (a), provides, "If a new trial is granted in the action the action shall again be brought to trial within the following times: [¶] . . . [¶] (3) If on appeal an order granting a new trial is affirmed or a judgment is reversed and the action remanded for a new trial, within three years after the remittitur is filed by the clerk of the trial court." Section 583.340 provides, "In computing the time within which an action must be brought to trial pursuant to this article [including section 583.320], there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined.[9] [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile."

A ruling in favor of the defendant on a motion for summary judgment followed by entry of judgment, as occurred in *Hindin v. Rust, supra,* 118 Cal.App.4th 1247, is a "trial" for purpose of section 583.320's time rules. (See, e.g., *McDonough Power*

_____

[8] Although the court lifted the discovery stay on April 4, 2011, the Hindin parties contend the stay remained in effect as a practical matter through June 15, 2011 when the court rejected their proposal to depose 64 witnesses and authorized a maximum of 10 additional depositions. That two month difference has no significance for purposes of our analysis of the motion to dismiss.

[9] Section 583.340, subdivision (b), applies only when a stay encompasses all proceedings in the action and does not include partial stays. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 723, 730.)

11

*Equipment Co. v. Superior Court* (1972) 8 Cal.3d 527, 531-533 [addressing former § 583, the predecessor to § 583.320; three-year provision applies to judgment of dismissal entered after reversal on appeal of an order sustaining a demurrer without leave to amend]; cf. *Berri v. Superior Court* (1955) 43 Cal.2d 856, 859.)  Accordingly, as the trial court found and both sides agree, the three-year period for the Hindin parties' to bring their case to trial against State Farm began to run on September 24, 2004 upon the filing of the remittitur following our reversal of the 2002 summary judgment in favor of State Farm.

Dismissal is mandatory if the requirements of section 583.320 are not met and an exception provided by statute does not apply.  (§ 583.360, subd. (b); see *McDonough Power Equipment Co. v. Superior Court, supra,* 8 Cal.3d at p. 530.)[10]  We review for an abuse of discretion the trial court's determination not to exclude periods during which plaintiffs contend it was impossible, impracticable or futile to bring the action to trial within the meaning of section 583.340, subdivision (c).  (*Bruns v. E-Commerce Exchange, Inc*. (2011) 51 Cal.4th 717, 731 ["[t]he trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion"].)  "Under 583.340(c), the trial court must determine what is impossible, impracticable, or futile 'in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves.  [Citations.]  The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.'  [Citations.]  A plaintiff's reasonable diligence

---

[10] To the extent the five-year time-to-trial deadline in section 583.310 provides a longer period to bring the case to trial than section 583.320's three-year deadline, the five-year statute controls.  (§ 583.320, subd. (b) ["[n]othing in this section requires that an action again be brought to trial before expiration of the time prescribed in Section 583.310"].)  That is, dismissal is not proper under section 583.320 at a time more than three years after the filing of a remittitur reversing a judgment but less than five years after the filing of the complaint; the action cannot be dismissed unless both periods have expired.

12

alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing exceptions of impossibility, impracticability, or futility. . . . Determining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' [Citation.] "'[I]mpracticability and futility" involve a determination of "'*excessive* and *unreasonable* difficulty or expense,'" in light of all the circumstances of a particular case.'" (*Id.* at pp. 730-731; see also *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 438.)

The plaintiff bears the burden of proving the circumstances justify application of section 583.340, subdivision (c)'s exception for impossibility, impracticability or futility. (*Bruns v. E-Commerce Exchange, Inc., supra*, 51 Cal.4th at p. 731.) That showing includes establishing a causal connection between circumstances of impracticability and the plaintiff's failure to move the case to trial. (*Gaines v. Fidelity National Title Ins. Co.* (Dec. 12, 2013, B244961) 222 Cal.App.4th 25, ___ [2013 Cal.App. Lexis 1001]; *DeSantiago v. D & G Plumbing, Inc*. (2007) 155 Cal.App.4th 365, 372; *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 328 (*Tamburina*).)

2. *The Appeals of the Judgments in Favor of the Individual Defendants Did Not Make It Impracticable or Futile To Bring the Case to Trial Within the Statutory Period*

The Hindin parties asked the trial court on three occasions to postpone the State Farm trial until this court resolved their appeals from the judgments entered in favor of the three groups of individual defendants.[11] The trial court rejected those requests, as did

---

[11] The Hindin parties' repeated characterization of the appeals as having been taken from the "erroneous summary judgments," while perhaps technically accurate, is neither helpful nor entirely fair. First, at the various times the trial court denied the Hindin parties' requests to defer the State Farm trial because of the pending appeals, as well as when the court granted State Farm's motion to dismiss, it was not known whether the orders granting summary judgment would be affirmed or reversed, that is, whether or not they were "erroneous." Presumably the trial court believed they were correct. (See *Kaye*

we in summarily denying the Hindin parties' petition for writ of mandate in May 2011. (*Hindin v. Superior Court, supra,* B232912.) Having directed the Hindin parties to proceed to trial against State Farm, it was not an abuse of discretion for the trial court to include within its calculation of the three-year mandatory period the time during which those appeals were pending.

Unquestionably, it is more efficient and less expensive to try a malicious prosecution action against a corporate entity, its senior executives and its in-house and outside counsel all at the same time, rather than to proceed first against the corporate entity and then separately against the individual defendants. But at the time the Hindin parties' stay requests were denied and they were directed to proceed to trial, all that remained in the trial court was the action against State Farm itself; and, as discussed, as to State Farm, the only remaining issue was the element of malice relating to the document claim. Trial of this limited issue would not have been excessively or unreasonably difficult or expensive. (Cf. *Brunzell Construction Co. v. Wagner* (1970) 2 Cal.3d 545, 554 ["'impracticability and futility' involve a determination of '"*excessive* and *unreasonable* difficulty or expense,"' in light of all the circumstances of the particular case"].) And neither affirmance nor reversal of the pending appeals would have affected the need to proceed to trial against State Farm unlike the situation in *New West Fed. Savings & Loan Assn. v. Superior Court* (1990) 223 Cal.App.3d 1145, 1152, relied upon by the Hindin parties, in which the decision on a pending writ "could have disposed of the entire action, making a trial in the case unnecessary." Accordingly, there was nothing impracticable or futile about completing the case, and the trial court properly

---

*v. Mount La Jolla Homeowners Assn.* (1988) 204 Cal.App.3d 1476, 1485 [impracticability must be evaluated as of the time the decision not to proceed to trial is made, not based on an after-the-fact evaluation of how pending proceedings in the appellate court are resolved].) Second, as explained in footnote 6, above, although we reversed the judgments, our opinion in *Hindin v. Wehner & Perlman, supra,* B216500, B223061, B228056 agreed with significant aspects of the trial court's conclusions, holding the individual defendants had probable cause to bring the restitution/constructive trust claims against the Hindin parties.

concluded the Hindin parties' failure to do so did not demonstrate "reasonable diligence." (See *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1270 [plaintiff has a duty to exercise reasonable diligence to ensure a case is brought to trial within the statutory period]; *Moss v. Stockdale, Peckham & Werner* (1996) 47 Cal.App.4th 494, 502 ["reasonable diligence is a condition precedent to invoke the exception of impossibility, impracticability, or futility"]; see also *Gaines v. Fidelity National Title Ins. Co., supra,* 222 Cal.App.4th at p. ___ ["[r]easonable diligence is required at all stages of the proceedings"].)

*Kaye v. Mount La Jolla Homeowners Assn*. (1988) 204 Cal.App.3d 1476, cited and quoted extensively in the Hindin parties' opening brief, does not compel a different result. In *Kaye* the court held it was impracticable within the meaning of section 583.340 for plaintiffs to bring their action to trial during the pendency of writ proceedings challenging the trial court's decision granting a summary adjudication motion eliminating their claims for punitive damages. (*Id*. at pp. 1485-1486.) But as with any evaluation of impracticability, the court's decision must be understood "'in light of all the circumstances in the individual case.'" (*Bruns v. E-Commerce Exchange, Inc., supra,* 51 Cal.4th at p. 730.)

In *Kaye* the trial court's order granting the motion was made on October 24, 1986; trial was set for November 6, 1986, several weeks before the five-year anniversary of the filing of the complaint. (*Kaye v. Mount La Jolla Homeowners Assn., supra,* 204 Cal.App.3d at p. 1481.) On November 6 plaintiffs told the trial court they had elected not to go to trial but instead to seek a stay and extraordinary writ review of the summary adjudication order. The writ petition was filed the same day. (*Id*. at p. 1482.) No stay issued. (*Ibid*.) On Friday, November 21, 1986—a mere 15 days after the petition had been filed—the court of appeal issued a peremptory writ of mandate with a written opinion reversing the order. The opinion further provided it would be "'final immediately, because the trial date must be set by [Monday,] November 24, 1986, to avoid the running of the five-year statute.'" On Tuesday, November 25, 1986 plaintiffs

15

moved to specially set the case for trial, arguing the five-year statute had been tolled on a variety of theories. Defendants objected, and the trial court dismissed the action. (*Ibid.*) In reversing the dismissal and finding it was impracticable to proceed to trial during the 15-day period the writ petition was pending, the appellate court explained not only would a separate trial of the punitive damage issue have been unnecessarily duplicative and wasteful because it would require presentation of evidence already introduced in an earlier trial devoted to compensatory damages but also the court's issuance of a peremptory writ had necessarily determined plaintiffs' remedy by way of an appeal after trial of the remaining issues was inadequate. (*Id.* at p. 1485.)

Here, the Hindin parties seek to exclude 1,078 days—just shy of three full years— between the filing of their initial notice of appeal of the decision granting summary judgment to the Wehner defendants and the date the judgment of dismissal was entered— a radically different procedural context. Moreover, the unnecessarily duplicative evidentiary presentation described in *Kaye* if plaintiffs had proceeded to trial first on their compensatory damage claims and then on their punitive damage claims was far greater than the similarities between the limited issue remaining for trial against State Farm (malice as to the document claim) and the wide variety of matters to be resolved on the appeals. Whether there was sufficient evidence to defeat summary judgment on the ground the Rust or Montgomery defendants had not authorized, directed or participated in the initiation or prosecution of the federal action could have no bearing whatsoever on a trial of the remaining claim against State Farm. State Farm was the plaintiff in the federal lawsuit; whether it had initiated that lawsuit was not open to debate. Also irrelevant to any trial against State Farm was the question whether some or all of the individual defendants lacked probable cause to pursue the document claim; as to State Farm, that question had been answered in our 2001 decision in favor of the Hindin parties. Similarly, whether the Wehner defendants, State Farm's outside counsel, were entitled to summary judgment based on lack of malice as to the document claim was, at most, only marginally related to the issue of State Farm's malice vel non because the

16

Wehner defendants' argument was predicated on their claimed lack of knowledge of the Drake order interpreting the settlement agreement. Again, we had resolved the question of knowledge of the Drake order as to State Farm in 2001.

Only the issue of probable cause to pursue the restitution/constructive trust claim, which had been eliminated from the case against State Farm by motion in limine, directly overlapped with issues in the pending appeals. But contrary to the Hindin parties' overly optimistic predictions, we affirmed the trial court's rulings precluding the Hindin parties from pursuing that aspect of their malicious prosecution claim against the individual defendants, completely forestalling any duplicative trial presentations. Even if we had not, whether a defendant had probable cause for instituting the prior action "has traditionally been viewed as a question of law to be determined by the court." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875.) Any evidentiary presentations to resolve disputed facts necessary to make the objective probable cause determination (see *id.* at p. 877) would not have been unreasonably extensive or expensive.

In sum, the trial court did not abuse its discretion in concluding the pending appeals of the judgments in favor of the individual defendants did not make it impracticable to bring the case to trial. (See generally *Brunzell Construction Co. v. Wagner, supra*, 2 Cal.3d at p. 554 ["[w]e in no way imply, of course, that whenever causes may be consolidated, it is 'impracticable' to proceed except against all permissibly joined parties"].)

3. *The Discovery Stay Did Not Make It Impracticable or Futile To Bring the Case to Trial Within the Statutory Period*

As discussed, discovery was stayed in August 1999 when the trial court first granted State Farm's motion for summary judgment. By that time the parties had conducted an extensive amount of written and deposition discovery under the supervision of a discovery referee although even more had been scheduled through December 1999. Specifically as it related to the document claim remaining as to State Farm, the Hindin parties had deposed the State Farm executives and lawyers involved in the underlying

settlement, those who had knowledge of the Drake order and the individuals who participated in the decision to include the document claim in the federal action.

In July 2007, at the time it granted both State Farm's motion in limine to preclude evidence relating to the restitution/constructive trust claim and the Wehner defendants' motion for summary judgment, the trial court rejected the Hindin parties' request for additional discovery both because they had failed to demonstrate a reasonable basis for their demands and because the court believed they had had ample opportunity for discovery prior to the August 1999 stay. The court explained, "To say substantial discovery was conducted by the parties prior to the transfer of the case to this Court would be an understatement. [¶] . . . [¶] In this Court's view, Plaintiffs' application seeks wide-reaching and boilerplate discovery tantamount to a fishing expedition. The requests are not focused, and it would perpetuate an injustice on the Defendants to allow the discovery, as proposed to go forward—especially in light of the substantial and comprehensive discovery Plaintiffs have already taken in this litigation. . . . [¶] . . . [¶] . . . Plaintiffs' proposed discovery would impermissibly expand the issues in this case, and the evidence sought is not 'essential' to the issues to be adjudicated. Such dramatic expansion of the case at this stage is a tactic which this Court will not sanction."

After denying several additional requests to reopen discovery, in April 2011, with only the document claim against State Farm remaining in the litigation, the court lifted the discovery stay in part. The court authorized the Hindin parties to take a maximum of 10 additional depositions, rather than the 64 they had identified, limited to the viability of the remaining document claim. Notwithstanding a 90-day extension of the new discovery cutoff date in August 2011, however, the Hindin parties did not take a single deposition between April 2011 and the March 2012 trial date.

The Hindin parties' failure to pursue additional discovery once it was authorized by the trial court belies their claim it was impracticable for them to proceed to trial against State Farm based on the information they had already obtained. Indeed, as reflected in our 2001 decision (*Hindin v. Rust, supra*, B135446), as of the 1999 summary

judgment motion and imposition of the discovery stay, the Hindin parties had evidence that established not only that the document claim lacked probable cause (that is, it was not objectively tenable) but also that there were triable issues of fact as to whether the claim had been initiated with malice. Although the Hindin parties may have been entitled to limited additional discovery, as the trial court eventually ruled,[12] and even though this further discovery might have been helpful in preparing for trial had it been taken, we cannot conclude the trial court abused its discretion— that there was no reasonable basis for its ruling or its decision exceeded the bounds of reason (*Sanchez v. City of Los Angeles, supra*, 109 Cal.App.4th at p. 1271)—in declining to exclude the period of the discovery stay from its calculation of the statutory three-year period to bring the case to trial.

     4. *Hindin's Health Problems Did Not Make It Impracticable To Bring the Case to Trial Within the Statutory Period*

Serious medical issues experienced by plaintiff or plaintiff's counsel may create a circumstance of impracticability that is causally connected to the failure to bring a case to trial within the statutory deadline within the meaning of section 583.340, subdivision (c). (See *Tamburina, supra*, 147 Cal.App.4th at pp. 331-335; *Him v. Superior Court* (1986) 184 Cal.App.3d 35, 37, 39.) Moreover, an unusually lengthy illness that deprives the plaintiff and his or her counsel of a substantial portion of the statutory period for trial preparation and other activities required to move the case to trial may establish impracticability even if the medical condition has resolved itself prior to the expiration of the statutory deadline. (*Tamburina*, at pp. 333-334; see *Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464, 473.)

However, not all illnesses of client or counsel qualify for the impracticability exception. As the court explained in *Sierra Nevada Memorial-Miners Hospital, Inc. v.*

---

[12] In remanding the case against the three groups of individual defendants in *Hindin v. Wehner & Perlman, supra,* B216500, B223061, B228056, we directed the trial court to allow the Hindin parties to conduct additional discovery.

*Superior Court, supra,* 217 Cal.App.3d 464, in the closely related context of applying the section 583.340, subdivision (c) impracticability exception to section 583.310, the five-year statute, "In the course of five years it is reasonable to expect that counsel will suffer a number of days when illness will prevent his attendance to his practice. Similarly, it is reasonable to expect that counsel will have to attend to other business, personal and professional, including, for example, days off and vacations. The five-year period contains an allowance for the time so consumed in the same manner as it allows for the usual and ordinary proceedings attendant to moving the case to trial. It would render the statute utterly indeterminate, subjective, and unadministerable, and thus absurd, to read an open-ended sick leave program for counsel into the tolling provisions of section 583.340, subdivision (c). [¶] The text of section 583.340 impels the view that there must be a causal connection between the circumstance upon which plaintiff relies and the failure to satisfy the five-year requirement. Bringing the action to trial must be impossible, impracticable, or futile for the reason proffered." (*Sierra Nevada,* at pp. 472-473, fn. omitted.)

Hindin was instructed by his cardiologist to avoid stress and to substantially reduce his work load due to his heart condition from August 31 through December 31, 2009 (122 days according to the Hindin parties' calculation). Surgery for his broken leg and related problems again disabled him between July 22, 2011 and December 31, 2011 (162 days per the Hindin parties). Combining these two medical events, the second of which did not occur until after the three years had already expired as calculated by the trial court, the Hindin parties contend, like the plaintiff in *Tamburina*, they were deprived of their counsel for a substantial portion of the three-year period.

Hindin's heart condition certainly may have prevented him from appearing at trial. But he had fully recovered more than a year before any trial date was even set and more than 18 months prior to the expiration of the statutory deadline. The issue was whether Hindin's infirmity made it impossible or impracticable for the Hindin parties to prepare for trial, not his readiness to act as trial counsel. As the trial court emphasized, Hindin

20

was not sole counsel for the Hindin parties. It was not unreasonable for the court to find other counsel could have continued to prepare the case for trial even if Hindin was lead or primary counsel because of his involvement in the underlying litigation and greater familiarity with evidence that had been gathered. Moreover, based on the parties' submissions, including information that Hindin was actively working on other litigation matters during this four-month period, the court reasonably concluded Hindin himself could have participated with cocounsel in necessary pretrial activities—that is, in bringing the action to trial. Indeed, during this period in late 2009 there was no discovery (because of the stay discussed in the preceding section), and the parties' efforts appear to have been concentrated on preparing and responding to summary judgment motions filed by certain of the individual defendants, activity that is generally far less stressful than trial itself or other contentious aspects of litigation.[13] Accordingly, the trial court did not abuse its discretion in declining to exclude this period from its calculation of the statutory three-year period to bring the case to trial.

Hindin's July 22, 2011 broken leg and ensuing surgery and spiral reinjury in the second half of 2011, with the trial then set for December 5, 2011, much more clearly interfered with the Hindin parties' ability to bring their case to trial. During that period additional discovery had been authorized by the court; and, although the litigation was not stayed for all purposes, on August 5, 2011 the court continued the previously scheduled trial date to March 13, 2012 and postponed various pretrial deadlines for 90 days because of Hindin's condition. Yet, as the trial court recognized, this period of disability only occurred after more than three years of active litigation had elapsed and the action was properly subject to dismissal under section 583.320. Therefore, there can be no causal connection between Hindin's broken leg and subsequent medical complications and the Hindin parties' failure to bring the case to trial within the statutory

---

[13] As described by Hindin's cocounsel, that work required "review, analysis, organization and presentation of the extremely voluminous documents accumulated in this action and in the underlying action."

21

period. (See *DeSantiago v. D & G Plumbing, Inc., supra*, 155 Cal.App.4th 365.) Although the Hindin parties assert it was somehow unfair for the court to continue the trial date from December to the following March without State Farm mentioning the three-year statute, they have cited no authority suggesting either that a period of "impracticability" after the mandatory deadline has passed extends the time to bring a case to trial or that the failure to move to dismiss under section 583.320 at the earliest possible opportunity forfeits the right to have an untimely action dismissed.

> 5. *State Farm Is Not Estopped from Arguing the Death of One of Its Lawyers Did Not Make It Impracticable for the Hindin Parties To Bring the Case to Trial*

In *Rose v. Scott* (1991) 233 Cal.App.3d 537 the court reversed a trial court's order dismissing an action for failure to bring it to trial within five years based, in part, on "the general rule" that "when a party seeks a continuance of trial, that party is estopped to assert limitations periods for bringing an action to trial." (*Id.* at p. 541.) Relying on this language the Hindin parties contend the period of delay caused by State Farm's request to continue the January 17, 2011 status conference after the death of James Robie should be excluded from the three-year statutory period.[14]

The court in *Rose v. Scott, supra*, 233 Cal.App.3d 537, however, considered two different periods of delay requested by defendants: a three-month continuance of the trial setting conference to permit a related administrative proceeding to conclude and an 84-day continuance of the trial date itself to permit the court to hear defendants' motion for summary judgment. (*Id.* at pp. 540-541.)[15] As to the first period, continuance of the trial

---

[14] Although the status conference was continued for only 76 days, the Hindin parties explain, if the running of the three-year statutory period is tolled during that time, then Hindin's total disability resulting from his leg injury and related medical complications began prior to the expiration of the statutory deadline. With that additional period of impracticability and the six-month extension provided in section 583.350, the three-year period would not have expired until August 25, 2012 even without any of the other tolling periods rejected by the trial court.

[15] The court also considered a third delay in bringing the matter to trial and held section 583.340, subdivision (c) tolling includes the aggregate time a case is continued

22

setting conference, the Court of Appeal expressly stated a stay of proceedings had been imposed by the trial court, "and the time of the stay is excluded in computing the five-year limitations period," citing section 583.340, subdivision (b), not subdivision (c)'s tolling provision for impossibility, impracticability or futility. (*Rose*, at p. 541.) The court's statement of "the general rule" of estoppel and its application to the case before it was limited to defendants' request to continue the trial date itself. (*Ibid.*; see *Ward v. Levin* (1984) 161 Cal.App.3d 1026, 1034 ["defendants' conduct in requesting continuance of the trial estopped defendants from seeking dismissal under the five-year provision of section 583"].)

Here, State Farm never requested a continuance of a trial date. Indeed, it did not even request a continuance of a "trial setting conference" notwithstanding the Hindin parties' repeated misuse of that label for the April 4, 2011 status conference.[16] The relatively short continuance of but one of many such status conferences at the request of a defendant—particularly when, as here, the delay was prolonged by the court's accommodation of plaintiffs' counsel's calendar conflicts—is not, standing alone, a proper basis for application of the doctrine of equitable estoppel. (See *Tejada v. Blas* (1987) 196 Cal.App.3d 1335, 1341 [as applied to motion to dismiss for failure to bring action to trial within statutory period, estoppel requires reasonable reliance by plaintiff on "statements or conduct by a defendant which lulls the plaintiff into a false sense of security resulting in inaction"]; cf. *Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1422-1423 [defendants not estopped from relying on five-year dismissal statute;

---

because of court unavailability. (*Rose v. Scott, supra*, 233 Cal.App.3d at pp. 341-342; accord, *Hattersley v. American Nucleonics Corp.* (1992) 3 Cal.App.4th 397, 300.)

[16] Although the court did, in fact, set a trial date during the continued April 4, 2011 status conference (after again rejecting the Hindin parties' request to postpone the trial until we decided their appeals from the judgments in favor of the individual defendants), when originally setting the conference for January 11, 2011 and then continuing it first to January 27, 2011 and thereafter to April 4, 2011, the trial court consistently identified it as a "further status conference." The "status conference" designation was again used, and emphasized by italics, in the court's order granting State Farm's motion to dismiss.

defense counsel's notice of unavailability for trial that extended beyond five-year cutoff date did not constitute any misrepresentation or waiver; it is plaintiff's obligation to monitor case and keep track of relevant dates].)

Far more apt than *Rose v. Scott, supra*, 233 Cal.App.3d 537 is *Sanchez v. City of Los Angeles, supra*, 109 Cal.App.4th 1262, in which our colleagues in Division Three of this court held the five-year statute was not tolled on the ground of impossibility, impracticability or futility during a stipulated continuance of the trial date after the death of defendant's counsel. Because ample time remained for plaintiffs to bring a motion to advance the trial date so trial could commence prior to the five-year cutoff date, the court concluded plaintiffs had failed to establish the requisite causal connection between the death and plaintiffs' failure to bring the case to trial within the statutory period. (*Sanchez*, at pp. 1271-1272.) Justice Croskey explained for the court, "[T]here was no causal connection between the circumstances upon which plaintiffs are relying and their failure to bring the action to trial within five years. The failure to bring the action to trial within five years was not due to the suicide of [defendant's] attorney; nor was it due to the four-month period between the date [defendant's] need for independent counsel arose and [the new attorney's] entry into the case . . . . [T]he failure to try the case within five years was not impracticable for the reasons proffered. [¶] Rather, plaintiffs' failure to bring the action to trial within five years is attributable to their counsel's lack of diligence in failing to keep apprised of the case's chronology." (*Id*. at p. 1272.) Similarly here, the Hindin parties acquiesced in State Farm's request to continue the January 2011 status conference—civility that is to be commended. But at the April 4, 2011 conference, when the December 5, 2011 trial date was set, the Hindin parties could have advised the court of the case's chronology and asked for a trial date before the three-year cutoff date. As in *Sanchez*, the death of defense counsel "did not result in a situation over which plaintiffs had no control." (*Id.* at p. 1273.)

In sum, it was the Hindin parties' obligation to exercise diligence and to protect their right to a trial. The trial court did not abuse its discretion in concluding, in light of

24

their failure to do so, any delay in the wake of James Robie's death did not make it impossible, impracticable or futile to bring the case to trial by July 13, 2011.

## DISPOSITION

The judgment is affirmed.  State Farm is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.